**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denise J. Cooper,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-19-00725-PHX-SPL<br><br>**ORDER** |

At issue is the denial of Plaintiff Denise J. Cooper's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant Commissioner of Social Security Administration's Opposition (Doc. 16, Def. Br.), and Plaintiff's Reply (Doc. 19, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 11, R.) and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 12–38).

**I.    BACKGROUND**

Plaintiff filed her Application on April 4, 2015, for a period of disability beginning on February 28, 2013. (R. at 15.) Plaintiff's claim was denied initially on October 1, 2015, and upon reconsideration on February 22, 2016. (R. at 15.) Plaintiff then testified at a hearing held before the ALJ on December 12, 2017. (R. at 15.) On January 9, 2018, the

ALJ denied Plaintiff's Application. (R. at 12–38.) This decision became final on December 10, 2018, when the Appeals Council denied Plaintiff's request for review. (R. at 1–6.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: lumbar degenerative disc disease, hypothyroidism, diabetes with peripheral neuropathy, and obesity. (R. at 19.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded Plaintiff is not disabled. (R. at 12–38.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 25.) The ALJ also determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with some limitations, including never climbing ladders, ropes, or scaffolding; avoiding occasional exposure to fumes, odors, dusts, and gases; and avoiding all exposure to moving and dangerous machinery and unprotected heights. (R. at 26.) After calculating Plaintiff's RFC, the ALJ determined that Plaintiff can perform her past relevant work as a pharmacy technician and complaint resolver. (R. at 30.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must

consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ improperly rejected Plaintiff's symptom testimony; and (2) the ALJ improperly rejected Plaintiff's treating nurse practitioner's opinions. The Court disagrees with both arguments.

### A. The ALJ did not err by rejecting Plaintiff's symptom testimony because he gave clear and convincing reasons supported by substantial evidence.

Plaintiff testified that her impairments caused constant pain in her back, down her right leg, and in both feet. (R. at 63–64.) She testified that she must lie down for at least one hour every day. (R. at 64.) She also estimated that she can lift one gallon of milk, stand and walk for five to 15 minutes at a time, and sit for 15 minutes at a time. (R. at 19.)

The ALJ discounted Plaintiff's testimony for three reasons. First, the ALJ determined that Plaintiff was noncompliant with treatment recommendations. (R. at 28.) Second, the ALJ found that Plaintiff's alleged limitations were inconsistent with the objective medical evidence. (R. at 27–28.) Lastly, the ALJ found that Plaintiff did not believe she was disabled because she was willing to amend her alleged onset date to one the ALJ would accept. (R. at 28.) The Court finds that the first two of these reasons are sufficient.

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ may properly consider that the claimant's medical record does not contain evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ may also properly consider inconsistencies in the claimant's testimony regarding her daily activities, treatment, and symptoms. *Id.*

The ALJ's first reason for rejecting Plaintiff's symptom testimony—that she was noncompliant with treatment recommendations—is clear and convincing and supported by substantial evidence. When considering a claimant's credibility, "the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). To determine whether the claimant adequately explained her decision to disregard a treatment

recommendation, the ALJ may consider whether she could afford the treatment, whether she was advised against the treatment, and whether she experienced any adverse side effects resulting from the treatment. SSR 16-3p.

Here, the ALJ correctly determined that Plaintiff's request to terminate physical therapy in 2017 after only six appointments was incongruent with her testimony regarding her pain and resulting limitations. (R. at 28.) According to treatment records, Plaintiff refused to do recommended exercises at home because "she does not have to" despite acknowledging some pain relief and repeatedly hearing from her doctors that exercise would help. (R. at 28, 1428–40.)

Plaintiff argues that she adequately explained why she stopped physical therapy, but the Court is not persuaded. She urges that her fear of movement resulting from years of chronic pain, as noted by her physical therapist, was a valid reason for not continuing to engage in physical therapy. (Pl. Br. at 15.) However, Plaintiff's physical therapist informed her that she should expect some discomfort in seeking to overcome her chronic pain. (R. at 1435.) Additionally, on multiple occasions Plaintiff successfully completed exercises and acknowledged relief. (R. at 1428–40.) Her rationale for terminating physical therapy after only six appointments is not clear from either the record or Plaintiff's Opening Brief.

Plaintiff also argues that the ALJ erred by not making a specific finding that physical therapy would lead to greater function. (Pl. Br. at 15.) However, Plaintiff misstates the law. The regulations state that the ALJ may find a claimant's testimony discreditable if she "fails to follow prescribed treatment that *might* improve symptoms." SSR 16-3p (emphasis added). Here, Plaintiff's physicians recommended and prescribed physical therapy and exercise to help treat Plaintiff's pain, *i.e.* they believed it *might* improve her symptoms. (R. at 818, 878.) Therefore, the ALJ properly considered Plaintiff's decision to terminate physical therapy after only six appointments.

The ALJ's second reason for discrediting Plaintiff's symptom testimony—that her alleged limitations were inconsistent with the objective medical evidence—is supported by substantial evidence. The ALJ cannot rely solely on a lack of objective evidentiary support

to reject the claimant's testimony but may consider it when weighing credibility. *Burch*, 400 F.3d at 680. Here, the ALJ thoroughly evaluated Plaintiff's medical records. (R. at 19–21, 27.) He first noted that there was limited diagnostic imaging to support Plaintiff's alleged pain and limitations. (R. at 27.) Notably, Plaintiff acknowledged this during the hearing. (R. at 43.) The ALJ also noted that two surgeons, Drs. Lyle Young and Christopher Yeung, advised against surgery after conducting physical examinations and reviewing imaging. (R. at 20.) Many of Plaintiff's physical examinations were "largely normal" with respect to strength, gait, and motor function. (R. at 27.) Additionally, Defendant points to observations by physicians that Plaintiff was "generally healthy . . . alert and pleasant, with a normal affect." (Def. Br. at 8.) After reviewing the record, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's testimony is not supported by objective evidence. Though the evidence may support an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational, and the Court upholds the decision where the evidence is subject to more than one rational interpretation. *See Burch*, 400 F.3d at 680–81.

Plaintiff urges that the ALJ's findings regarding the medical records were too general because he failed to connect specific records to specific portions of Plaintiff's testimony (Pl. Br. at 14–15), but the Court disagrees. The ALJ was not required systematically discuss or cite to the medical evidence and symptom testimony. Instead, where the ALJ has summarized and interpreted the pertinent facts and conflicting evidence, the Court is permitted to draw reasonable inferences concerning the ALJ's findings. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Here, the ALJ considered Plaintiff's testimony and determined, generally and with reference to specific records, that the medical evidence reflected that Plaintiff was not as limited as alleged. The Court finds that this was a specific reason to reject Plaintiff's testimony.

The ALJ's final reason for rejecting Plaintiff's testimony—that she was willing to amend her onset date—is not clear and convincing or supported by substantial evidence. The ALJ did not explain why Plaintiff's willingness to amend her onset date is probative

of her credibility. Moreover, the Court is not persuaded by Defendant's argument that Plaintiff offered to amend her onset date because she does not believe she was disabled. (Def. Br. at 10.) Nevertheless, because the ALJ offered other specific, clear, and convincing reasons for rejecting Plaintiff's testimony that are supported by substantial evidence, the ALJ's errant rationale regarding Plaintiff's willingness to amend her alleged onset date was harmless. *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

### B. The ALJ did not err by rejecting the opinion of Plaintiff's treating nurse practitioner.

Plaintiff also argues that the ALJ erred by giving little weight to the opinion of her nurse practitioner, Sara Edmund. (Pl. Br. at 17–25.) Ms. Edmund completed medical assessments in November 2015 and February 2016 in which she opined that Plaintiff can sit, stand, and walk for fewer than two hours in an eight-hour workday; can lift and carry fewer than ten pounds in an eight-hour workday; and must alternate between sitting, standing, and walking every one to 20 minutes. (R. at 1416.) Ms. Edmund also opined that Plaintiff would miss six or more days per month and be off task more than 21 percent of each workday due to her impairments. (R. at 1417.)

The ALJ rejected Ms. Edmund's assessments for three reasons. First, the ALJ found that Ms. Edmund's opinions were unsupported by medical records, including her own. (R. at 29.) Next, the ALJ found that Ms. Edmund did not adequately explain her opinions. (R. at 29.) Finally, the ALJ noted that Ms. Edmund was not Plaintiff's primary provider for pain management. (R. at 29.) The Court finds that these reasons were sufficient.

At the time Plaintiff filed her claim, nurse practitioners fell under the definition of "other sources." 20 C.F.R. § 404.1513(a). Although an ALJ must provide specific and legitimate reasons for rejecting the opinion of a "medically acceptable treating source," the ALJ may discount the opinion of an "other source" by providing "reasons germane to each witness" that are supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Regardless of the source, in evaluating an opinion the ALJ may consider the length of the treatment relationship, the extent to which the opinion is supported and

explained, the consistency of the opinion with the record as a whole, and whether the source has specialized knowledge. 20 C.F.R. § 404.1527(f)(1).[1]

Here, the ALJ's reasons for rejecting Ms. Edmund's opinion were proper considerations under the regulations and germane to Ms. Edmund. Additionally, they were supported by substantial evidence. Plaintiff argues that the ALJ's rationale was improper because he "was not in a position, as an administrative adjudicator, to determine whether NP Edmund's assessed limitations . . . were 'extreme' in light of the medical evidence." (Pl. Br. at 19.) However, the regulations permit the ALJ to evaluate the evidence of record, including medical opinions. *See* 20 C.F.R. § 404.1529; *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). Therefore, the ALJ properly considered whether Ms. Edmund's opinions were supported by the record.

Plaintiff also argues that the ALJ's findings were too general because he did not explain which medical evidence contradicted Ms. Edmund's opinions. (Pl. Br. at 20.) However, as previously discussed, where a reasonable inference may be drawn that the ALJ relied on evidence he cited to in a different section, the Court is permitted to draw it. *See Magallanes*, 881 F.2d at 755. The ALJ previously analyzed the objective medical evidence and determined that it is largely inconsistent with Plaintiff experiencing severe functional limitations. Therefore, the ALJ properly rejected Ms. Edmund's opinion based on a lack of support from the record.

In sum, the Court finds that the ALJ gave germane reasons supported by substantial evidence for rejecting Ms. Edmund's opinions and therefore did not err.

///

///

///

///

---

[1] This section has since been amended, but still applies to all claims filed before March 27, 2017. 20 C.F.R. § 404.1527.

**IT IS THEREFORE ORDERED** affirming the January 9, 2018 decision of the ALJ. (R. at 12–38.)

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 16th day of March, 2020.

Honorable Steven P. Logan
United States District Judge